## COMMONWEALTH *versus* OLIVER BLACKINGTON.

If it be the duty of the county commissioners, under Revised Stat. *c.* 47, to license one or more persons in each town to retail spirituous liquors, their refusal to licens ,y person whatever does not annul the statute and authorize every person to ~ spirits without a license.

A ꜰ˙ prohibiting the sale of spirituous liquors by retail, without a license, and e. ʌg the payment of an excise on the granting of the license, is not repugnant to ι ; constitution of the Commonwealth.

THIS was an indictment against the defendant for retailing spirituous liquors in 1836, without license, in violation of Revised Stat. *c.* 47, § 3.

At the trial in the Common Pleas, before *Williams* J., after the district attorney had introduced evidence that the defendant had sold spirits in small quantities, the defendant proved that he was a licensed retailer during the year 1835, and that the county commissioners for this county had neglected and refused to grant any licenses whatever for retailing spirits during the year 1836. And the defendant contended that this neglect and refusal of the commissioners was a violation of their duty, the effect of which was to restore to every citizen of the county the right to sell, in the same manner as if the statute did not exist ; and that the statute was void, because it was repugnant to the constitution of this Commonwealth. But the court instructed the jury, that the neglect of the commissioners did not constitute a legal defence in this case, and that the statute was valid. The jury found a verdict against the defendant, and he filed exceptions to the instructions of the court.

*Nov. 8th,*     *Cushing* and *Rantoul*, for the defendant, cited in support
*1837.*       of the exception respecting the unconstitutionality of the statute, Declaration of Rights, *art.* 1, 6 ; and in regard to the commissioners' refusal to grant any licenses, *St.* 1837, *c.* 242, § 2.

*Austin*, Attorney-General, referred, on the first point, to Declaration of Rights, *art.* 18 ; Constitution, *c.* 1, § 1, *art.* 4 ; *Portland Bank* v. *Apthorp*, 12 Mass. R. 252 ; *Schaffer* v. *Boston*, 9 Pick. 415 ; *Lunt's case*, 6 Greenleaf, 412.

SHAW C. J. afterward drew up the opinion of the Court. The first ground of defence in point of law taken to this in-

dictment is, that the county commissioners for the county of Essex had neglected and refused to grant any licenses whatever, for retailing spirits in said county, during the year in which the offence was charged, and it was contended, that this was in effect a refusal to execute the law, and that all persons were thereby restored to the right of selling spirituous liquors, without license, and without incurring the penalties of the statute. We do not think it necessary to lay much stress on the objection to this ground of defence, that it does not appear that the defendant applied for a license, or that he would have been refused, or that he had obtained the requisite certificate and recommendation from the selectmen, although under some views of the case, they might be entitled to much consideration. But we are to understand, that by some general resolution the county commissioners expressed an opinion, that in their judgment, the public good did not require that any licenses should be that year granted to retailers, in consequence of which the defendant was deterred from applying for a license, or procuring a recommendation from the selectmen. The Revised Statutes, c. 47, § 1, 2 and 3, contain the general prohibition against being an innholder, or selling, or being a retailer without being first duly licensed. Then the 17th section provides, that the commissioners may license for the towns, &c. as many persons to be innholders or retailers therein, as they shall think the public good may require.

It is not necessary in the present case to decide the broad and general question, whether under these provisions, it was within the fair scope of the discretion intrusted to the commissioners, to determine that the public good did not require the license of any person as a retailer in any town in the county ; because the Court are of opinion, that if it might be deemed the duty of the commissioners to license one or more retailers in each town, and if they had mistaken the extent of their authority in this respect, it would not annul the statute, and throw open the door to every person to sell without license, and therefore would be no defence in the present case. Where an act can only be lawfully done by one qualified in a certain manner, it will not make the act of an unqualified person lawful, that those whose duty it was to confer the qualifica-

tion have, through mistake or otherwise, refused to confer that qualification. Various illustrations might be put. Supposing a person appointed to office is prohibited under a penalty from performing any of the duties of the office unless first duly sworn, and those whose duty it is, doubting the validity of his appointment, or otherwise, and from whatever cause, should refuse to administer the oath ; his official act would not thereby be rendered valid, or the act lawful, or the actor exempt from the penalty. The case was put and strongly pressed in the argument, suppose a court of justice should come to the conclusion that litigation is immoral and inexpedient, and tends to disturb the quiet and harmony of society, and should refuse to try causes, and render judgments, and issue executions. This might be a great perversion of justice, a great error of judgment, or a manifest dereliction of duty. But it would not authorize a creditor to seize the person or the property of his debtor, or levy on his real estate, and obtain a good title, without a judgment and execution. It was said in support of this argument, that by an act passed after the Revised Statutes, and after the act charged as an offence in this indictment, the law was altered, and the authority was conferred on the commissioners to refuse all licenses, if in their judgment it was expedient, and hence it is inferred, that in the judgment of the legislature, they had not this authority before. We have already said, that it is not necessary for the decision of this case to determine whether they had or had not an authority to exercise their judgment and discretion to the extent stated ; but it may be proper to say in relation to this argument of legislative exposition, that the late act, *St.* 1837, *c.* 242, is in this respect merely declaratory, and provides that nothing contained in this act, or in the 47th chapter of the Revised Statutes, shall be so construed as to require the county commissioners to grant any licenses, when in their opinion the public good does not require them to be granted. This provision, so far as it can have any weight as a legislative exposition, seems rather a declaration of what the true meaning of the former act was, than an enactment introductive of a new law.

But by far the gravest, if not the most formidable objection to this indictment is, that the whole system of laws providing

for the licensing of innholders, victuallers and retailers, and prohibiting unlicensed persons from selling spirituous liquors, is contrary to the constitution of the Commonwealth, and of course, that all these laws are inoperative and void.

It is remarkable, if this objection is well founded, that in the course of nearly sixty years that the constitution has been in operation, and in the numerous prosecutions which have taken place under it, this objection has not been before taken. These laws in nearly the same form in which they are now found, were commenced soon after the Colony of Massachusetts was first founded, and were revised and amended from time to time, during the continuance of the colonial government ; they were revised and reënacted soon after the grant of the new province charter, in 1692, and revised from time to time under the provincial government ; and within a few years after the adoption of the present constitution, they were revised and reënacted, and with some amendments and modifications, have been in force ever since. Besides, they are laws which have not remained idle and inoperative in the statute book ; but affecting as they do, large classes of persons, and extensive interests and branches of business, they have been steadily and constantly practised upon and carried into operation and effect. It has generally been considered, that when an act has been passed soon after the adoption of the constitution, and by a legislature, many of the members of which may be presumed to have been members of the convention which adopted the constitution, and who had well weighed its objects and provisions, such act may be viewed somewhat in the light of a contemporaneous construction of the provisions of the constitution. It may well be considered by those who come later to the construction and exposition of the constitution, as affording some light in regard to the views and intentions of its founders. Still, if the statute now in force, can be shown to be plainly inconsistent with the provisions of the constitution, which is the fundamental law, controlling and restraining the government as well as the people, it is the duty of the judicial tribunal so to declare ; and it is the right of the subject to have the benefit of it. It is however hardly possible too often to repeat the familiar sentiment, that although this power of deciding on the constitutionality of legal enactments, is one

clearly vested in the judicial department, it is to be resorted to and exercised with great caution and deliberation, and it is always to be presumed that a coördinate branch of the government has acted within the limits of its constitutional authority, until the contrary shall clearly and satisfactorily appear.

With these views of the constitution, and the manner in which the powers confided by it to the legislature are to be regarded, it becomes necessary to examine the various parts of the constitution, which are supposed to be infringed by the enactment of the laws in question. In construing this constitution, it must never be forgotten, that it was not intended to contain a detailed system of practical rules, for the regulation of the government or people in after times ; but that it was rather intended, after an organization of the government, and distributing the executive, legislative and judicial powers, amongst its several departments, to declare a few broad, general, fundamental principles, for their guidance and general direction.

Another general consideration is perhaps not of less importance in understanding the genius and spirit of our constitution, and it is this ; that this declaration of rights, and frame of government, composing together the constitution, was not first prepared and drawn up by and for a people who were then, for the first time, establishing political and civil institutions, for their security and government ; it was rather a slight remodelling of a social system, by a people who had long enjoyed the protection of law, and the security of social order, under a government, nearly as free, and practically nearly as popular, as the lot of humanity would admit. The constitution itself recognises this condition of law and social order, and provides that all laws, before adopted, used and approved, in the Colony, Province or State, should remain and continue in force, such parts only excepted, as were repugnant to the rights and liberties contained in the constitution itself. Each particular clause and provision of the constitution therefore, and especially in the declaration of rights, is to be expounded under the broad light thrown upon it by this constant reference, tacit or express, to established laws and institutions, and to the principles and maxims of civil liberty, secured and regulated by mild, equal and efficient laws.

The legis'ature are invested with full power and authority to make, ordain and establish all manner of wholesome and reasonable orders, laws, statutes and ordinances, either with penalties or without, so as the same be not repugnant or contrary to the constitution, as they shall judge to be for the good and welfare of the Commonwealth. A large discretion is thus given to the legislature to judge what the welfare of the Commonwealth may require ; and this power is restrained only so far, as not to be expressly, or by necessary implication, repugnant to the constitution. The power is the general rule ; the restraint of it the specific exception.

The first argument of the defendant was founded on the preamble of the constitution, which announces one of its great objects to be, to secure to individuals the power of enjoying in safety and tranquillity their natural rights, one of the most important of which is, that of acquiring, possessing and protecting property. This is one of those general truths, which both legislators and people should keep constantly in view, and therefore properly finds its place in a declaration of rights. But it is by no means repugnant to any salutary laws, designed to regulate the means of acquiring property ; and a large proportion of all the laws which have been passed, since the adoption of the constitution, have related, more or less directly, to the acquisition, preservation and transmission of property. Indeed such laws are necessary to define, secure and give practical efficacy to the right itself. Traffic and commerce are no doubt among the means of acquiring property, and as such are entitled, under due regulation, to protection. To hold that it is not subject to regulation, by law, would be a departure from the whole policy of the government, from the first settlement of the country. All the inspection laws, providing for the inspecting and marking of the principal products of our agriculture and manufactures, with a view to benefit our commerce in those articles, at home and abroad ; all laws made with a view to revenue, to health, to peace and good morals, are of this description. So in regard to all those pursuits, occupations and trades, in the skilful and faithful performance of which the public have an interest, such as surgeons, physicians, attorneys, pilots, ferrymen, masters and conductors of steamboats,

railroads, and very many others, especially in cities and popu-
lous towns. Such laws, though they impose salutary regula-
tions upon trade, have never been deemed unconstitutional.

It was suggested, that if selling spirit without license is im-
moral, it ought not to be licensed at all ; if not immoral, it
could not be constitutionally prohibited. This argument was
not much pressed, nor can it be of much weight. It would
abolish the distinction between *malum in se* and *malum prohibi-
tum*. But many things are prohibited by law, either absolutely
or *sub modo*, not because they are in themselves immoral, but
because they tend to immorality, or other mischief or incon-
venience, to the community or to individuals.

But the principal ground on which it is contended that the
laws in question are repugnant to the constitution is, that it is
a violation of the 6th article of the declaration of rights.
This article declares, that no man or corporation or associa-
tion of men, have any other title to obtain advantages, or par-
ticular and exclusive privileges, distinct from those of the
community, than what arises from the consideration of services
rendered to the public, &c. The article is very familiar.

In the first place, in regard to most of these licenses, they
are granted to those who in remuneration therefor, become re-
sponsible for the performance of very important duties to the
public, as innkeepers. And in regard to all, the licensed per-
sons are compelled to come under regulations, in the observ-
ance of which the public have an interest. In this respect
they are put upon the footing of pilots, ferrymen and others,
who do obtain exclusive privileges in consideration of services
to be rendered at the times and in the manner most beneficial
to the public.

But the decisive answer is, that the exclusive authority and
power to sell spirit by retail, is not conferred on the licensed
person, as a benefit or privilege to him, or with a view to give
him an exclusive right ; but solely because the peace and se-
curity, the morals and good order of the community, will be
promoted by it, and the exclusive power therefore is collateral
and incidental, and not one of the objects and purposes of the
law. Many other laws do in their effect and operation, neces-
sarily confer benefits, more or less exclusive, upon individual

citizens ; but this not being the design of the law, and the real object and obvious purpose of the law being to promote the public good, it cannot be considered obnoxious to the objection that it is repugnant to this article of the declaration of rights.

The Court are all of opinion, that there was no error in the decisions and instructions of the Court of Common Pleas, and the exceptions are overruled.