# Commonwealth *v.* Spence, Appellant.

*Liquor law—Limitation on license.*

Where a person petitions for a retail liquor license, and strikes from the printed form the word "Spirituous" wherever it occurs in both petition and bond, and the court makes an order granting the license as "prayed for," the licensee may be convicted of selling a low grade of whisky without a license, even if the license granted to him gives him the right to sell vinous, malt and brewed liquors.

Argued March 17, 1910. Appeal, No. 3, Oct. T., 1910, by defendant, from judgment of Q. S. Chester Co., on verdict of guilty in case of Commonwealth v. James Spence. Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Indictment for selling liquor without a license.
At the trial the jury returned a verdict of guilty.

On a motion for a new trial and in arrest of judgment, BUTLER, J., filed the following opinion:

Prior to the passage, in 1887, of what is known as the Brooks high license act, the law provided for an inn or hotel license, under which spirituous, as well as vinous, malt and brewed liquor could be sold, and for an eating-house license, under which only the last named class of liquors, comparatively low in percentage of alcohol, could be sold. Where a fit person applied for a hotel license, and it was proved that he could provide proper meals and lodging for his guests, and it was further proved that the traveling public had substantial need for hotel accommodation at the place asked to be licensed, he was entitled to a hotel license. Where a suitable person applied for an eating-house license and demonstrated that the public needed his place as an eating house, he was entitled to that form of license. The Brooks act of 1887 has created a retail liquor license, a license that has no necessary rela-

tion to a hotel or eating house, for it may lawfully be granted, and commonly is in the cities, to those who intend to provide the public with nothing but a liquor saloon. Confronted by this state of the law, Judge FUTHEY, then upon the bench of the district, felt that the public would be sufficiently accommodated with spirituous liquors, if the new retail liquor license should be confined to the hotels. He was not willing to grant it for the creation of mere drinking places, nor did he consider it a proper license, authorizing as it did the sale of spirituous liquors, to grant to the eating houses. At the same time he was of opinion that those eating houses which were necessary to the convenience and comfort of the public, should be permitted to furnish liquors containing a small percentage of alcohol, as they had in the past, under the old eating-house license. Such licenses were granted by Judge FUTHEY, and have continued to be granted by his successors down to the present time, the licensees paying the same amount of license fee as the hotel proprietors who are granted the Brooks retail liquor license. The defendant, who has for many years conducted an eating-house in West Chester, after the passage of the act of 1887, annually applied for and received a license of the character above described, to sell vinous, malt and brewed liquors, as sanctioned by the old eating-house license, until a few years ago, when having greatly improved his building, he asked for the retail liquor license of the act of 1887. Feeling as did Judge FUTHEY that this license should be confined to the necessary hotels of the county and concluding that his house was not needed as a hotel, because of its proximity to existing hotels, and the absence of occasion for more, the court refused to grant this license, but under another and appropriate application granted him the other form of license. Such a license he continued to apply for and receive; and such a license he held—authorizing the sale only of vinous, malt and brewed liquors at the time he was convicted. On the trial the proof was conclusive and

unquestioned, that he sold spirituous liquor, what was substantially a low grade of whisky, very much richer in alcohol than any vinous, malt or brewed liquor, such a percentage as could not be produced by fermentation, but only by distillation. The jury was instructed that the defendant had no license to sell spirituous liquor, and that if he had done so, it was their duty to convict him. In support of this motion for a new trial, it is contended that error was committed in telling the jury that defendant had no license to sell spirituous liquor, that the license granted him must be treated as any act of 1887, retail liquor license, because, as is contended, the law sanctions no other retail license. We cannot subscribe to this. If the law permits no other retail liquor license to be issued, than that prescribed by the Brooks act, then the defendant's request for, and the court's granting of another and different kind of retail liquor license was a mere abortion, and defendant received no license at all. A few years ago he was refused the Brooks retail liquor license, and on his other petition granted a different license, which, on similar petition, has been renewed each year. In view of this, we cannot regard him as holding the first-named license. Surely if one should ask for and receive a written authorization from the court to sell cider and should pay the license fee prescribed for a Brooks retail license, it would not be contended that he had been granted the latter license. We agree with counsel for defendant that if this court had granted the Brooks license, it could not have imposed restrictions and conditions of its own making, could not have denied the right given by it, to sell spirituous liquors. We also acquiesce in the proposition that if it appeared that the court had intended to grant the Brooks license, the fact that its decree or order, following the petition as it does, omits the word, "spirituous," would not prejudice the defendant, for the extent of privilege granted would be controlled by the law under which the decree was made, and with which it would, in such case, have been in-

tended to accord. This is foreign to the case being considered, however, for there was no appearance even, of a purpose to grant the defendant the Brooks license. The application on which his present license issued, states on the outside or back, that it is a petition for an eating-house license, and inside reads that it is a petition for a license to sell vinous, malt and brewed liquors, and it is such a license, and none other, that the court undertook to grant. It may have granted no license, but it certainly did not grant, and was not understood by the defendant to have granted, the Brooks license authorizing the sale of spirituous liquors. We think that the propositions of defendant's counsel to the effect that the defendant was in any sense coerced into accepting an emasculated Brooks license, and has been imposed upon by being required to pay the license fee therefor, are not sound. As already stated, his petition for the Brooks license was positively and finally refused, and that application was fully determined and at an end, and he has never paid any license fee in that connection. On his petition for what is practically the old eating-house license, favorable action was taken, and voluntarily paid, as he and all other eating-house licensees have paid since Judge FUTHEY began issuing this license, after the passage of the act of 1887, the same fee as is paid by those who receive the Brooks license. We must also except to the proposition that if there is no authority in law for issuing such a license, a wrong has been done the defendant in granting it, and permitting him to pay a license fee therefor. The fallacy of this contention becomes manifest when it is appreciated that no trouble has come to the defendant by reason of any weakness or defect in his license, that on the other hand, his calamity is referable solely to his willful deliberate violation of the express terms of his license, to his sale of spirituous liquor, whisky, which it did not purport to authorize. We understand that there are at least two districts in the state, that composed of Montgomery county being one, in which, as here,

what is substantially the old eating-house license is still issued.

The rules for new trial and in arrest of judgment are dismissed.

*Error assigned* among others was in refusing to arrest the judgment.

*A. M. Holding,* for appellant, cited: Mercersburg Liquor Licenses, 5 Pa. Dist. Rep. 171; Franklin County Liquor Licenses, 12 Pa. Dist. Rep. 212; Jefferson County Licenses, 15 Pa. Dist. Rep. 563; Donoghue's License, 5 Pa. Superior Ct. 1; In re Breslin, 45 Hun (N. Y.), 210.

*Robert S. Gawthrop,* district attorney, for appellee, cited: Com. v. Hayes, 149 Mass. 32 (20 N. E. Repr. 456); Com. v. McCormick, 150 Mass. 270 (22 N. E. Repr. 911).

Opinion by Beaver, J., April 18, 1910:

The appellant states the question involved after this fashion: "Has the Court of Quarter Sessions power to grant a retail liquor license and limit the license to the sale of vinous, malt and brewed liquors?" If we answer this question in the affirmative, the appellant got precisely what he asked for and was properly convicted for the sale of spirituous liquors for which he had no license. If we answer it in the negative, he had no license of any kind and was, therefore, even more properly, if such a thing be possible, convicted.

The defendant presented his petition to the court of quarter sessions of Chester county, praying for a license "for one year from April 1, 1909, for the sale of vinous, malt and brewed liquors, by retail, in quantities not exceeding one quart, at the place above described," which was, as stated in the petition, "Spence's Restaurant." The petition was in the usual printed form. Wherever the word spirituous occurred, however, it was stricken out, as it was in the bond which accompanied the petition. The decree upon the peti-

tion was: "Now March 1, 1909, after hearing, the license as prayed for is granted." The defendant was indicted for selling and causing to be sold "certain vinous, spirituous, malt and brewed liquors, and an admixture thereof, without having first obtained license, agreeably to law, for that purpose, contrary to the form of the act," etc.

The testimony taken at the trial is not printed in the appellant's paper-book. We learn from his history of the case, however, that "it was shown upon the trial that the appellant, pursuant to his license, had sold 'Bitters,' which was to some degree a spirituous liquor," and in the paper-book of the appellee it is said that the "Bitters" referred to was a low grade of whiskey sold over his bar.

As we understand the facts of the case, the appellant, although charged in the indictment with selling certain vinous, spirituous, malt and brewed liquors, the testimony of the commonwealth relating to spirituous liquors only, was convicted solely of that offense.

The appellant, in his argument, says: "An examination of the petition and of the court's order thereon shows, however, that the court undertook to limit or restrict the license to the sale of vinous, malt and brewed liquors," and argues the question as growing out of this statement: "Not the license but this restriction, it is respectfully submitted, was void, and the licensee had the right to sell spirituous as well as malt and brewed liquors." The appellant here attempts to put the court granting the license in a false position. The court made no restriction whatever. It granted a license "as prayed for." Whether the court had a right to grant such a license under the authority of the Brooks law of 1887, under the principle that the greater includes the less, is one which we do not now consider, and whether or not the license so granted was void is also outside of this case, as we regard it. This was not a case of restriction imposed by judicial legislation. If restriction was valid, it was only imposed upon the appellant by himself, in which the court acquiesced. There was no decree as to the amount of the license fee to be paid. That was an entirely separate and

distinct transaction between the appellant and the county treasurer. What that license fee was we are not informed, because, as previously stated, the testimony is not printed. That, however, was a question with which the court had nothing to do. The alleged hardship of which the appellant complains is, therefore, not in the case, so far as the court is concerned, and it is idle for him to say that, "It is the height of injustice to impose upon him (the appellant) a large fine, sentence him to prison, and take away his license, and thus destroy the business which he has been building up for some forty years." This is not only unfair, but it is not correct. The business which he has built up, as appears by his own showing, was under just such a license as the court granted.

The court, in dismissing the rule for a new trial and the motion in arrest of judgment, has filed an opinion covering the facts of the case which we can gather from no other source, as the paper-book is made up, and it will, therefore, be well to print that opinion in connection with the report of the case.

Judgment affirmed and record remitted to the court below to the end that the sentence of the court may be fully carried into effect.