# Commonwealth *v.* Spence, Appellant.

*Liquor laws—Retail liquor license—Eating house license—Sale of spirituous liquors—Sale without license—Act of May 13, 1887, P. L. 108.*

Where a person petitions the court of quarter sessions for a license "to sell vinous, malt and brewed liquors by retail," and indorses his petition as one for "an eating house license" and the court makes an order "license as prayed for is granted," the Supreme Court will construe the license granted as a retail liquor license under the Act of May 13, 1887, P. L. 108, which gives the licensee authority to sell not only vinous, malt and brewed liquors, but also spirituous liquors; and if the licensee sells spirituous liquors, he cannot be convicted of selling liquor without a license.

Mestrezat, Potter and Stewart, JJ., dissent.

Argued Oct. 17, 1910. Appeal, No. 183, Jan. T., 1911, by defendant, from judgment of Superior Court, Oct. T., 1910, No. 3, affirming judgment of Q. S. Chester Co., on verdict of guilty in case of Commonwealth v. James Spence. Before Fell, C. J., Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ. Reversed.

Indictment for selling liquor without a license.
Appeal from judgment of the Superior Court.

*Error assigned* was the judgment of the Superior Court.

*A. M. Holding,* for appellant, cited: Mercersburg Licenses, 5 Pa. Dist. Rep. 171; Franklin County Liquor Licenses, 12 Pa. Dist. Rep. 212; Jefferson County Licenses, 15 Pa. Dist. Rep. 563; Donoghue's License, 5 Pa. Superior Ct. 1; In re Breslin, 45 Hun (N. Y.), 210.

*Robert S. Gawthrop,* district attorney, for appellee, cited: Com. v. Hayes, 149 Mass. 32 (20 N. E. Repr. 456); Com. v. Markoe, 34 Mass. 465; Com. v. McCormick, 150 Mass. 270 (22 N. E. Repr. 911).

Opinion by Mr. Justice Brown, March 20, 1911:
The appellant applied to the court of quarter sessions

of Chester county for a license to sell liquors. His petition was for a license "to sell vinous, malt and brewed liquors by retail," and it was granted as prayed for. During the year for which it was issued he sold spirituous liquors, and, having been indicted for selling without a license in violation of the Act of May 13, 1887, P. L. 108, was convicted and sentenced to pay a fine and undergo imprisonment. On appeal to the Superior Court, his conviction was sustained: Com. v. Spence, 43 Pa. Superior Ct. 7.

At the time the appellant sold spirituous liquors he held in his hands a license to sell liquors, granted to him by the same court of quarter sessions that directed the jury to convict him of selling without a license. "But," says that court, speaking of itself in its opinion sustaining the verdict against him, "it certainly did not grant, and was not understood by the defendant to have granted, the Brooks license authorizing the sale of spirituous liquors." It did, however, direct a license to issue to him to sell intoxicating liquors, and such license was issued to him by its clerk in pursuance of its decree, after he had paid to the commonwealth the fee fixed by the Brooks act for the privilege of selling vinous, spirituous, malt and brewed liquors. The authority of a court of quarter sessions to grant a liquor license rests solely upon legislative enactment, and, in the absence of statutory authority to grant it, no court can direct it to issue. The only act of assembly in existence authorizing the granting of a license at the time the court below granted one to the appellant was that of May 13, 1887, popularly known as the Brooks law. This is made too plain for discussion by the first section of the act, which provides "that it shall be unlawful to keep or maintain any house, room or place, hotel, inn or tavern, where any vinous, spirituous, malt or brewed liquors, or any admixture thereof, are sold by retail, except a license therefor shall have been previously obtained as hereinafter provided." These last three words make it unlawful to conduct any retail liquor establishment unless

a license is first obtained under the act of 1887, thereby excluding and virtually repealing all prior methods of granting licenses. The eighth section provides that all persons licensed to sell at retail any vinous, spirituous, malt or brewed liquors, or any admixture thereof, in any house, room or place, hotel, inn or tavern, shall be classified for the purpose of fixing the license fee to be paid by a retailer, whose privilege, no matter in which class he may be, is to sell spirituous as well as vinous, malt and brewed liquors. This change in the law was at once generally recognized by the judges of the courts of quarter sessions throughout the state, and, so far as we are informed, the attempt to grant licenses other than as authorized by the act of 1887 has long since ceased, except in one or two counties. The county of Chester is one of these, and the judges of its court of quarter sessions seem to recognize the absence of any power under the present statute to grant eating house licenses, but make excuse for granting them that they but followed a custom established by a former member of the court. But where did he get any authority to grant such a license? It was not his province, but a purely legislative function, to determine what kind of a license may be issued for the sale of liquors.

In view of the unambiguous declaration of the legislature that a license to sell intoxicating liquors must be obtained in accordance with the provisions of the act of 1887, we are constrained to say that we are utterly at a loss to understand how the learned trial judge below could have held that the license issued to the appellant had not been issued under that act. And yet that is what he held in his language quoted from the opinion denying a new trial and arrest of judgment. If the license was not issued under that act, it was not issued under any, and the court undertook to give to the appellant a privilege to sell liquors without the semblance of authority to do so; the license issued to him was utterly void and he was as guilty of a violation of the statute when he sold malt or brewed liquors under it as he was when he sold whisky. The court

surely never could have intended this, but it is the position into which the commonwealth is driven in asking that the judgment be affirmed. The appellant either had or had not a license. If he had one, it could have been issued to him only under the act of 1887. This certainly ought not to be questioned, and the court below concedes that if it was issued under that act, his right under it was to sell spirituous liquors. This unavoidable concession is found in the following words in the opinion of the court refusing a new trial: "We agree with counsel for defendant that if this court had granted the Brooks license, it could not have imposed restrictions and conditions of its own making, could not have denied the right given by it, to sell spirituous liquors. We also acquiesce in the proposition that if it appeared that the court had intended to grant the Brooks license, the fact that its decree or order, following the petition as it does, omits the word 'spirituous' would not prejudice the defendant, for the extent of privilege granted would be controlled by the law under which the decree was made, and with which it would, in such case, have been intended to accord." A direct authority in support of this manifestly correct view is Breslin's Case, 32 N. Y. 210. In issuing a license in that case the board of excise undertook to prohibit the licensee from selling to his guests intoxicating liquors to be used with their meals on Sunday. The statute gave him the right to so sell, and, in deciding that the restriction which the board undertook to place upon the license issued by it was void, the court said: "A critical examination, assisted by the deliberate and mature consideration and comparison of the act of 1857 (chap. 628) and the several amendments thereof, suggested by the argument at the General Term, demonstrated that the power of the board of excise is limited to the granting or refusing of licenses. If the license be granted, the statutes regulate the rights acquired by it, the restrictions to be observed and the punishment for each violation of its provisions. It cannot, therefore, either enlarge or diminish these rights and obli-

gations, or interfere with them in any way.   The officers
composing it cannot insert in the license a limitation, re-
striction or condition which is repugnant to the statute;
but if they do so, it is void, and hence the clause in the
relators' license absolutely prohibiting the sale of liquor
upon certain days named in it, is, as the result of our con-
struction and interpretation of the statute, unauthorized
and nugatory."   And so here, the power of the court below
was limited to granting or refusing the license, and, having
granted it, the restriction placed upon the holder of it as
to the kinds of liquors he could sell under it was "unau-
thorized and nugatory."

We are not concerned on this appeal, involving grave
consequences to the appellant, with what the court below
intended to do, or with what it thought it had done.   Our
concern must be only as to what it actually did from the
standpoint of the law.   If it misunderstood the statute,
and did what it now says it did not intend to do, the con-
sequences of its misunderstanding are not to fall upon the
head of the appellant.   If it did not intend that he should
have a license to sell spirituous liquors, its only course, as
guided by the law, was to refuse him a license altogether,
but, authorized by the law to grant him a license to sell
liquors, it gave him one which, for the reasons stated, it
is idle to say was not issued under the act of 1887, and, if
issued under that act, the court below concedes that the
appellant had a right to sell spirituous liquors.

The first nine clauses of the fifth section of the act of
1887 set out in detail just what must appear on the face
of a petition for a license to sell liquors at retail.   The ap-
pellant's petition complied literally with these require-
ments, and what he set forth as to the kinds of liquors he
proposed to sell had no proper place in it, for the statute
did not call for this.   It was, therefore, mere surplusage.
As the act declares what shall be sold under a license, if
the court shall grant it, the petition of the appellant ought
not to have been considered as anything else than one for
a retail license under the act of assembly, to be refused or

granted by the court with such restrictions only upon the right to sell as are fixed by the act. Every jurisdictional averment required by it appeared upon the face of the petition. In this connection it may be proper to note that the court below seems to attach some importance to the fact that the petition was indorsed as one for "an eating house license." This indorsement was no part of the petition, for a rule governing all pleadings and court proceedings is that captions and indorsements are no parts of the paper: Jackson et al. v. Ashton, 8 Peters, 148; In re Gorman, 15 Am. Bank. Rep. 587.

It may be that the appellant did not keep faith with the court, but he was not on trial for that; and it may be that his word was broken, but it was on a promise which the court had no power to exact from him, and for this he is not to go to prison as a convict. The offense charged is selling liquor without a license, and this in the face of a decree of a competent court granting him a license to sell, under which he sold what the statute authorized him to sell as the holder of a retail license. The record, reviewed from a judicial and logical standpoint, discloses a judgment radically wrong. The judgment of the Superior Court is reversed, as is that of the court below, and the defendant is discharged from his recognizance.

Mr. Justice Mestrezat, dissenting:

I cannot agree with the conclusion of the majority of the court that either the court of quarter sessions or the Superior Court erred in its disposition of this case. The opinions of these courts clearly vindicate the correctness of the judgment which they entered. The majority opinion, I submit, finds no support in any decision in this or any other jurisdiction; on the other hand, it is at variance with well-established legal principles universally recognized in the courts of this country and England.

James Spence, the defendant below and appellant here, was indicted in the court of quarter sessions of Chester county for selling vinous, spirituous, malt or brewed liq-

uors without having a license authorizing him so to do. On the trial of the cause, it appeared that he had sold spirituous liquors within the jurisdiction of the trial court. As a defense he offered in evidence a license issued by the quarter sessions of Chester county authorizing him in terms to sell vinous, malt or brewed liquors. This was his only defense, and it would have been sufficient and adequate to protect him and to prevent a conviction if the license had authorized him to sell spirituous liquors. The learned court, however, held and so instructed the jury that the license did not authorize the defendant to sell spirituous liquors, and that, therefore, if the jury believed the evidence the defendant was guilty of selling spirituous liquor in manner and form as indicted. The jury rendered a verdict of guilty, and the defendant was duly sentenced. An appeal was taken to the Superior Court, and the unanimous judgment of that court affirmed the conviction and sentence of the defendant by the court of quarter sessions. This appeal was taken by the defendant from the judgment of the Superior Court.

It is conceded by the majority of the court that the appellant was properly convicted and sentenced, unless the license produced by him on the trial authorized him to make sale of spirituous liquors. He contends, and the majority of this court sustains the contention, that the license offered in evidence conferred upon him such authority. I agree that if the license authorized the sale of such liquors, the appellant was not guilty and the sentence or judgment of the quarter sessions was erroneous. The single question, therefore, upon which this case turns, is whether at the time the appellant sold the spirituous liquor he had a license issued by the court of quarter sessions of Chester county authorizing him to make the sale.

The facts of the case are not in dispute, and are clearly and comprehensively stated in the opinion of the learned trial judges dismissing the rule for a new trial and the motion in arrest of judgment. They may be briefly summarized: The appellant presented his petition to the court of

quarter sessions of Chester county "for a license to sell vinous, malt and brewed liquors, by retail, in quantities not exceeding one quart" at a place in West Chester "known as 'Spence's Restaurant;'" and prayed that a license might be granted him for one year from April 1, 1909, "for the sale of vinous, malt and brewed liquors . . . . at the place above described." The petition was indorsed: Eating House License. Accompanying the petition was a certificate signed by thirteen electors of the borough of West Chester certifying to the temperate habits and good moral character of the petitioner and praying "that the prayer of the petitioner be granted and the license prayed for issued." Filed with the petition was the bond of the petitioner and two sureties reciting that application was about to be made to the court of quarter sessions of the county of ,Chester "by the said James Spence, for a license to sell vinous, malt and brewed liquors by retail for one year," and which was conditioned that he observe "all the laws of this commonwealth relating to the selling or furnishing of vinous, malt and brewed liquors, and any admixture thereof" and would pay any damages recovered against him for violating any act of assembly relating to "selling or furnishing liquors as aforesaid." The license was granted by the following order: "Now, March 1, 1909, after hearing the license as prayed for is granted." On the same day the sureties on the bond were approved by the court. This is the license which the appellant offered as a defense to the indictment charging him with the illegal sale of spirituous liquors. It appears that after the enactment of the Brooks High License Law, May 13, 1887, P. L. 108, the court of quarter sessions of Chester county continued to grant what were known as eating house licenses which were authorized by prior legislation. The reason for granting such licenses and the practice in license applications in the quarter sessions of Chester county are clearly and fully stated in the opinion of the learned court refusing the appellant a new trial.

It will be observed from the statement of the undisputed

facts that the appellant applied for and received a license authorizing him to sell vinous, malt and brewed liquors, an eating house license under the Acts of March 31, 1856, P. L. 200, and April 20, 1858, P. L. 365; that he filed a bond conditioned only for the observance of the law in selling vinous, malt or brewed liquors; that he did not apply for and was not granted a license authorizing him to sell spirituous liquors, and did not file the bond which the act of 1887 requires to be filed before a license is issued authorizing the sale of spirituous liquors.

The position of the appellant, as stated in the printed argument of his counsel, is as follows: "An examination of the petition and of the court's order thereon shows, however, that the court undertook to limit or restrict the license to the sale of vinous, malt and brewed liquors. Not the license, but this restriction, it is respectfully submitted, was void, and the licensee had the right to sell spirituous as well as malt and brewed liquors." This contention of the appellant is sustained by the opinion of the majority of the court and is the reason for the judgment about to be entered reversing the Superior and trial courts.

The appellant was indicted and convicted under the Act of May 13, 1887, P. L. 108, which makes it unlawful to keep or maintain any house, etc., where vinous, spirituous, malt or brewed liquors or any admixture thereof are sold without a license therefor shall have been obtained from the court of quarter sessions, and imposes a penalty for selling without such license. It logically follows that when a person is indicted for selling vinous, spirituous, malt or brewed liquors in this state and it is shown on the trial that he has made sale of such liquors, his only justification and defense is a license issued to him by the court of quarter sessions of the county in which the liquors were sold. In such case it is sufficient to warrant a conviction that the commonwealth prove the defendant made sale of the liquors; and it need not go further and prove a negative by showing that he had no license authorizing him to make the sale. The burden is then shifted to the

defendant and he must produce a license issued by the proper court authorizing him to sell, within its jurisdiction, the liquors which the indictment charges were illegally sold. This is undoubtedly the law in Pennsylvania and has been so held whenever the question was raised: Com. v. Clymer, 217 Pa. 302; Com. v. Dilbo, 29 Leg. Int. 150, per PAXSON, J.; Com. v. Rosenberg, 52 Pitts. Leg. J. 68, per McILVAINE, P. J.; Com. v. Wenzel, 24 Pa. Superior Ct. 467. In the latter case a point raising the question was put to the court of quarter sessions and was there ruled against the defendant and the ruling was subsequently affirmed by the Superior Court. The same principle has been recognized in other states where it is held that if the defendant relies on a license as a defense, the burden is on him to produce a license which authorizes him to make sale of the liquors which he is indicted for selling: State v. Foster, 23 N. H. 348, 55 Am. Dec. 191; Jefferson v. People, 101 N. Y. 19; Taylor v. State, 49 Ind. 555; State v. Ahern, 54 Minn. 195; Plainfield's Treasurer v. Watson, 57 N. J. L. 525; Com. v. Curran, 119 Mass. 206; Lambie v. State, 151 Ala. 86; Josey v. State, 88 Ark. 269.

The effect of the license offered by the appellant as a defense to the prosecution and which he claims authorized him to make sale of spirituous liquors may be considered from three view points: (a) the license was valid as granted, authorizing the licensee to sell vinous, malt or brewed liquors, but not spirituous liquors; (b) the license was wholly invalid and did not authorize the licensee to make sale of any liquors; (c) the license was valid and authorized the defendant to sell not only vinous, malt and brewed liquors, but also spirituous liquors. The last view is the one taken by the majority of the court, and on which it reverses the conviction of the appellant.

Was the license authorizing in terms the defendant to sell vinous, malt or brewed liquors valid? If so, it would not avail the defendant in this prosecution. It did not authorize him to sell spirituous liquors and hence could be

no defense to the prosecution in this case in which it was alleged and proven that he had sold spirituous liquors. It is, therefore, unnecessary to determine whether the court of quarter sessions is now empowered to grant what was known prior to the act of 1887 as an eating house license which authorized the licensee to sell vinous, malt and brewed liquors. The question is not raised or necessary to a decision in this case. I wish to suggest, however, that no court within the state has held in any reported case that the legislation authorizing the granting of eating house licenses is not now in force, while the quarter sessions in several counties have ruled that it has not been repealed and have continued to grant such licenses since the enactment of the Brooks High License Law. The act of 1887 contains no general repealing clause, and conflicts with the legislation authorizing the granting of eating house licenses only as to the licensee fee. In view of the settled rules of statutory construction that implied repeals are not favored, and that it will not be presumed that the legislature intended a repeal by implication unless there is such a manifest repugnance and inconsistency between the statutes that they cannot stand together, it is not apparent why it should be held that the act of 1887 repeals the eating house legislation which is in pari materia with it. Judge FUTHEY of the court of quarter sessions of Chester county granted such licenses. His able and distinguished successors have continued to grant eating house licenses authorizing the licensee to sell vinous, malt and brewed liquors. The court of quarter sessions of Lebanon county in an opinion filed by Judge McPHERSON, now of the United States district court for the eastern district of Pennsylvania, and concurred in by SIMONTON, P. J., in Behny v. Bassler, 4 Pa. C. C. Rep. 496, reviews all the legislation on the subject in this state, and points out that the legislation prior to the passage of the act of 1887, authorizing the granting of eating house licenses, with the exception noted by him is still in force and not repealed by the latter act. In the opinion the

learned judge says: "If we continue to apply these rules (of construction) to the act of 1887, it seems to us that the position stated above is sound. The act (of 1887) is only one of many on the same subject; it does not take the place of all other acts and stand alone, a complete system in itself. Upon this point, it is enough to say that there are no words of express repeal (except as to certain local laws), and that secs. 7, 10, 12, 15 and 18 distinctly recognize that some other laws are still in force. . . . This is all entirely consistent with the earlier laws, which divided retail licenses into two classes, and therefore the rules of construction above stated seem to require us to say, that tavern and restaurant licenses are still distinct classes, that the act of 1887 applies to both, and that in this county a restaurant license continues to authorize the sale of domestic wines, malt, and brewed liquors only." The court held that there is a clear repugnancy between the price to be paid for a restaurant license under prior legislation and the fee fixed by the act of 1887, and that the licensee must pay the fee fixed by the latter act. After quoting the words of the act of 1887 on the subject of the license fee, Judge McPHERSON says: "These words are plain and sweeping, applying to tavern and restaurant licenses alike, and requiring as much to be paid for one as for the other, although their privileges are not equally extensive. This is purely a matter of legislative policy, with which the courts have nothing to do except to see that it is carried out." The act of 1887 received a like construction by the quarter sessions of Lackawanna county in Lackawanna County Licenses, 5 Pa. C. C. Rep. 462. The opinion was written by HAND, P. J., who shortly thereafter became a justice of this court. The learned judge says: "It (act of 1887) is entitled 'An Act to restrain and regulate,' and it makes no general repeal of former laws. It must, therefore, be construed in the light of its title, and as a part of the whole system of law upon this subject. No distinction is made in the character of the license granted from what existed before. The license

must be either for restaurant, or hotel, or wholesale.  The
former cannot allow the sale of distilled liquors."   In
view of the decisions of these and other eminent judges
in other counties of the state holding that since the act
of 1887 the quarter sessions may grant eating house li-
censes authorizing the sale of vinous, malt and brewed
liquors, I submit that it is not wise for this court to an-
nounce a contrary doctrine when the question is not
raised and should not have been argued in the present
case.

Was the license void and therefore conferred no author-
ity upon the licensee to sell any liquors whatever?   If
this view should be entertained, it is obvious that it would
not aid the appellant and prevent his conviction.   To de-
clare his license void is to sustain the appellant's convic-
tion of the crime charged against him in the indictment.

Was the license held by the appellant authorizing him
to sell vinous, malt and brewed liquors valid and sufficient
to authorize him to sell spirituous liquors?   This question
is answered in the affirmative by the majority of the court,
but I submit that such a proposition is anomalous and
has neither reason nor precedent to support it.   It will be
observed that the application of the appellant was for an
eating house license, authorizing him to sell only vinous,
malt and brewed liquors; that he was certified as a proper
person to have an eating house license; that he filed a
bond which was not conditioned as required by law to
entitle him to receive a retail liquor license under the act
of 1887; and that the license granted by the court was an
eating house license and did not in terms authorize the
sale of spirituous liquors.   The learned judges of the quar-
ter sessions did not intend to grant a liquor license under
the Brooks High License Law or Act of May 13, 1887,
P. L. 108.   This is an uncontroverted fact as appears by
the opinion of the quarter sessions wherein it is said: "We
agree with counsel for the defendant that if this court had
granted the Brooks license, it could not have imposed
restrictions and conditions of its own making, and could

not have denied the right given by it, to sell spirituous liquors. We also acquiesce in the proposition that if it appeared that the court had intended to grant the Brooks License, the fact that its decree or order, following the petition as it does, omits the word 'spirituous,' would not prejudice the defendant, for the extent of privilege granted would be controlled by the law under which the decree was made, and with which it would, in such cases, have been intended to accord. This is foreign to the case being considered, however, for there was no appearance even, of a purpose to grant the defendant the Brooks license. The application on which his present license issued, states on the outside or back that it is a petition for an eating house license and inside reads that it is a petition for a license to sell vinous, malt and brewed liquors, and it is such a license, and none other, that the court undertook to grant. It may have granted no license, but it certainly did not grant, and was not understood by the defendant to have granted the Brooks license authorizing the sale of spirituous liquors." It is, therefore, manifest that the appellant asked for and received only an eating house license, that it was the intention of both the applicant and the court that he should receive such a license, and that only such a license was granted him.

Let us assume, however, that the court had no authority to grant the license which the appellant received and which did not authorize him to sell spirituous liquors, and that the license was granted under the act of 1887 authorizing the licensee to sell vinous, spirituous, malt and brewed liquors, and that the court imposed a limitation or restriction thereon by omitting the word "spirituous" from the license. Of course there is and can be no question that in terms the license issued to the appellant authorized him simply to sell vinous, malt and brewed liquors, and that the word "spirituous" was not in the application for, nor in the decree granting, the license. Could such a license avail the appellant on an indictment for selling spirituous liquors without a license? Suppose the statute,

as it might have done, had authorized the court of common pleas or the orphans' court, instead of the court of quarter sessions, to hear applications and grant licenses to sell liquors, and this license had been granted to the appellant in the same form by the common pleas or orphans' court, could it even be pretended that the license would be a defense to a prosecution in a court of quarter sessions for selling spirituous liquors?  In other words, when the license was offered as a defense to the prosecution of the appellant in this case in the quarter sessions, could that court reverse the decree of the court of common pleas or orphans' court which had granted the license, and hold that as the license court had no authority to grant the limited license the appellant had a full retail liquor license?  It is immaterial that the statute confers jurisdiction upon the court of quarter sessions to grant licenses as well as to try criminal cases.  The jurisdiction to grant licenses, although exercised by the same tribunal, is separate and distinct and the decrees or judgments entered in the two branches of the court are as separate and distinct and of the same validity as if entered in different courts.  I take it that this proposition is not, as it cannot successfully be, disputed.  It follows, therefore, that to sustain the position of the majority of the court reversing the conviction of the appellant it must be held that an attack may be made on the decree or judgment granting the license in a collateral proceeding in which the licensee is indicted in the criminal branch of the court for a violation of the liquor laws.  Concede, as I have said, that the quarter sessions court was required to grant a full license, the decree or judgment granting the limited or restricted license cannot be attacked on the trial of the licensee for having violated the laws of the commonwealth in selling spirituous liquors.  To so hold is in direct conflict with our own authorities as well as with the well-established doctrine in all jurisdictions on the subject of collateral attack.  The court is compelled to insert and read into the license granted by the decree of the quarter sessions

the word "spirituous" which would manifestly be an attack upon the integrity of the decree. It is settled law in Pennsylvania that even though erroneous a judgment or decree obtained without fraud or collusion in a court of competent jurisdiction is conclusive until set aside by an appropriate and a direct proceeding in due course of law. The appellant could have applied for a license under the act of 1887 authorizing him to sell spirituous as well as vinous, malt or brewed liquors, and if the court had arbitrarily or illegally refused to grant it, he had a full and ample remedy by an appeal to the proper appellate court; but so long as the decree, granting him the limited license was in force, it could not be attacked in any other court or in any collateral proceeding in the same court. That is hornbook law. A decree or judgment may be erroneous, but it binds the parties until it is reversed or set aside in an appropriate proceeding instituted for the purpose.

It has been distinctly ruled that on an indictment for selling liquor without a license it is no defense that the proper court had refused to grant a license, whether the refusal was rightful or wrongful: State v. Jamison, 23 Mo. 330; Com. v. Blackington, 41 Mass. 352; State v. Downer, 21 Wis. 274; East St. Louis v. Wider, 46 Ill. 351. That one executes the bond and tenders the fee does not give him the right to sell unless he secures a license: State v. Bach, 36 Minn. 234. That a defendant presents a proper petition, tenders a bond and possesses all the qualifications of a dramshop keeper is no defense to a prosecution for selling without a license, if the court fails to grant a license: State v. Huntley, 29 Mo. App. 278; and it is unlawful for a dealer to sell any other kinds of liquors than those mentioned in the license: Gersteman v. State, 35 Tex. Crim. R. 318; Lucio v. State, 35 Tex. Crim. R. 320.

But the allegation that the license court granted to the appellant a retail license under the act of 1887 and attempted to limit or restrict his sales to vinous, malt or brewed liquors is wholly without any foundation in fact or in law. A license to sell liquors is a mere privilege and

the licensee must take it as it is granted him or not at all. This court has decided that no person in this state has any property in the right to sell liquors: Raudenbusch's Petition, 120 Pa. 328. It does not lie with appellant after having asked for and received an eating house license to allege that the court should not have granted his application, but should have issued to him another and different license authorizing him to sell a different liquor: Pantall v. Rochester & P. Coal & Iron Co., 204 Pa. 158. He is estopped from making such contention, and it will not avail him when indicted for selling liquor without a license: Com. v. Rourke, 141 Mass. 321; State v. Stone, 6 Vt. 295; Williams v. Louis, 14 Kans. 605.

There is another and an absolutely controlling reason why it cannot legally be held that the appellant had a license to sell spirituous liquors, and that is that he had not complied with sec. 2 of the Act of April 24, 1901, P. L. 102, which requires that before any license for the sale of liquors is issued the applicant shall give a bond conditioned for the faithful observance of the laws relating to the selling and furnishing of vinous, spirituous, malt or brewed liquors and any admixture thereof. The word "spirituous" is omitted not only from the application and the license but also from the bond of the appellant. Even if the position of the majority of the court be correct that this court has the right by construction to insert the word "spirituous" in the license granted the appellant, it has no authority to change the condition of the bond by inserting the word therein so as to make it obligatory upon the sureties. The obligation of the surety in a bond of this or any other character is contractual, and the terms of the bond or contract cannot be changed even by an order of court without the consent of the surety. It, therefore, necessarily follows that if it be conceded the court granted and issued to the appellant a license to sell spirituous as well as vinous, malt or brewed liquors and imposed a limitation or restriction thereon, the license was absolutely void and did not authorize him to sell spiritu-

ous liquors because he had not complied with the section of the act of 1901 above referred to which specifically provides as a prerequisite to issuing the license that the applicant shall give the bond required by the act before the license is issued. The right to sell intoxicating liquors, as conceded by the majority opinion, depends upon a license granted in accordance with the provisions of the statute regulating the subject, and when a defendant interposes a license as a defense in a prosecution for the sale of such liquors, it must appear that he had a valid and legal license granted in entire conformity with the statute. Every condition imposed by the statute under which the license is granted must be strictly complied with: 17 Am. & Eng. Ency. of Law (2d ed.), 331. The bond must be given before the license is issued: Houser v. State, 18 Ind. 106; State v. Shaw, 32 Me. 570; State v. Fisher, 33 Wis. 154. Without giving the bond as required by the statute, therefore, the license is absolutely void and affords no protection to a defendant charged with the illegal sale of liquor. By the judgment to be entered in this case, all the eating house licensees in the state are at once converted into retail liquor dealers authorized to sell spirituous liquors without having filed a bond to protect the public against illegal sales of spirituous liquors, in plain violation of sec. 2 of the Act of April 24, 1901, P. L. 102, which provides that "the license shall not be issued to any person . . . . until he . . . . shall have executed a bond to the commonwealth . . . . with two sufficient sureties . . . . conditioned for the faithful observance of all the laws of this commonwealth relating to selling or furnishing . . . . spirituous . . . . liquors," etc.

I would affirm the judgment of the Superior Court.

MR. JUSTICE POTTER, dissenting:

I am not able to agree with the conclusion reached by the majority of my brethren, that the court of quarter sessions granted to this appellant a license to sell liquor under the Brooks law. As the judge of the court of quar-

ter sessions says, in his opinion filed in dismissing the motion for a new trial, "There was no appearance even, of a purpose to grant the defendant the Brooks license. The application on which his present license issued, states on the outside or back, that it is a petition for an eating house license, and inside reads that it is a petition for a license to sell vinous, malt and brewed liquors, and it is such a license and none other, that the court undertook to grant."

The opinion of the court of quarter sessions shows the existence in Chester county of a local practice by which licenses have been granted to eating houses, which did not authorize the sale of spirituous liquors, but authorized only the sale of vinous, malt or brewed liquors. It is stated that "the defendant, who has for many years conducted an eating house in West Chester, after the passage of the Act of May 13, 1887, P. L. 108, annually applied for and received a license of the character above described, to sell vinous, malt and brewed liquors, as sanctioned by the old eating house license, until a few years ago, when having greatly improved his building, he asked for the retail liquor license of the act of 1887. Feeling as did Judge FUTHEY, that this license should be confined to the necessary hotels of the county and concluding that his house was not needed as a hotel, because of its proximity to existing hotels, and the absence of occasion for more, the court refused to grant this license, but under another and appropriate application granted him the other form of license. Such a license he continued to apply for and receive, and such a license he held, authorizing the sale only of vinous, malt and brewed liquors, at the time he was convicted. On the trial the proof was conclusive and unquestioned, that he sold spirituous liquor, what was substantially a low grade of whisky, very much richer in alcohol than any vinous, malt or brewed liquor, such a percentage as could not be produced by fermentation, but only by distillation. The jury were instructed that the defendant had no license to sell spirituous liquor, and that if he had done so, it was their duty to

convict him." Under these instructions, appellant was convicted.

Both in the court of quarter sessions and in the Superior Court the conviction was sustained upon the theory that if the so-called eating house license issued to appellant was valid, it did not pretend to give him any authority to sell spirituous liquors. If the license was invalid, then appellant had no license at all, and of course had no right to sell alcoholic liquors. It seems to me that this theory is more reasonable and logical, than that appearing in the majority opinion, which holds that because some kind of a license was issued to appellant, it must necessarily have been a license to sell liquors under the Brooks law. This theory cannot be sound. To quote again from the trial judge, "Surely, if one should ask for, and receive a written authorization from the court to sell cider and should pay the license fee prescribed for a Brooks retail license, it would not be contended that he had been granted the latter license."

The court of quarter sessions erred in attempting to grant the so-called eating house license, but I cannot see that its mistake in that respect affords any basis for the conclusion that its action was equivalent to the grant, under the Brooks law, of a license to an applicant it deemed entirely unfit to receive such a license. The eating house license was simply void, as the present law confers no right to issue a license permitting the sale merely of vinous, malt or brewed liquor. There was in the Act of March 31, 1856, P. L. 200, and in the Act of April 20, 1858, P. L. 365, provision for the granting of licenses for the keeping of eating houses; but these licenses were to authorize the sale of no intoxicating liquors, except domestic wines, malt and brewed liquors. Under these acts, it seems to have been the practice of various courts of quarter sessions to grant eating house licenses up to the time of the passage of the Act of May 13, 1887, P. L. 108, known as the Brooks high license law. As instances of such licenses, see Gilbert's License, 2 Chest. Co. Rep. 269;

King's Application, 2 Pa. C. C. Rep. 17; Morris's License, 2 Pa. C. C. Rep. 79. But the act of May 13, 1887, put an end to any authority to issue such eating house licenses, by the sweeping character of the prohibition in the first section, which provides "that it shall be unlawful to keep or maintain any house, room or place, hotel, inn or tavern, where any vinous, spirituous, malt or brewed liquors, or any admixture thereof, are sold by retail, except a license therefor shall have been previously obtained as hereinafter provided."

There is nothing in the law to authorize the issue of the so-called eating house licenses, and the attempt to issue such an one in this case was therefore void. But why should that ineffective action be vitalized by this court, by construing it to be the grant of a license under the Brooks law, thus giving to appellant something for which he did not apply, and which the court of quarter sessions considered him unfit to receive, and which, in the exercise of its proper discretion, it said it would not grant?

I would affirm the judgment of the Superior Court.

STEWART, J., concurs in this dissent.