Commonwealth *v.* Shawell, Appellant.

Commonwealth *v.* England, Appellant.

498

Argued January 18, 1937.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Warren K. Hess*, with him *William M. Rutter*, for Shawell, appellant.

*Emerson B. Rasbridge* and *William A. Witman, Jr.*, for England, appellant.

*John A. Rieser*, District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, March 22, 1937:

As the questions involved in these two appeals are similar, they will be disposed of in one opinion. Marcus England and Edward Shawell, were indicted for the murder of Evan Lape, operator of a gasoline service station, in the perpetration of robbery and burglary. England pleaded guilty, and Shawell changed his plea from not guilty to guilty. The trial judge, sitting alone in a court having three judges, heard the testimony, and found the murder to be first degree, fixing the penalties at death. The two other judges of the court concurred. Defendants were then sentenced by the entire court, all three judges sitting. Thereafter Shawell filed a motion to withdraw his plea of guilty, which was refused. These appeals followed.

The chief error assigned is the holding of the hearing to determine the degree and fix the penalty by one judge in the absence of a majority of the court, and the concurrence in his conclusion by the two other judges who were not present at the hearing. There is also assigned as error the refusal of Shawell's motion for leave to withdraw his plea of guilty.

While the chief question raised does not touch upon the merits, nevertheless, it is the duty of this court to

review the record to determine whether the essential elements of first degree murder are present, accepting as true all the evidence adverse to appellants, since the credibility of the witnesses was for the court below. We find all the necessary ingredients of murder of the first degree present in the case, but as appellants ask to withdraw their pleas of guilty we will review the facts.

Appellants, apparently in need of funds, set out about midnight in England's automobile to get them. They selected Lape as the victim, and parked their car near his gasoline filling station, where he lived alone. When the lights illuminating the station were extinguished, the car was driven up to it, and Lape was induced to come out of the room by being told they wanted to buy gasoline. While he was pumping gasoline into the tank, one of the appellants struck him on the side of his head above his ear with a blackjack or tape covered bludgeon about twenty inches long belonging to England. The blow fractured his skull and brought him to the ground. Appellants carried him into the house and fled, taking his wallet containing about eighty dollars and a small wooden box containing a few dollars in change. They drove to England's house, where they hid the blackjack and divided their loot. Lape, lying on the floor in a pool of blood but still conscious when found, died two days later.

Lape was brutally killed while appellants were in the act of robbing him, and murder committed in the perpetration of robbery is murder in the first degree under the Act of May 22, 1923, P. L. 306, Section 1. It does not matter which of the appellants struck the fatal blow, as they are equally guilty in the eyes of the law: *Com. v. De Leo,* 242 Pa. 510, 515. Nor is it material that the killing was not intended. Those who join in the perpetration of a robbery are responsible for any killing resulting therefrom, whether accidental or otherwise: *Com. v. McManus,* 282 Pa. 25, 27, 28.

The imposition of the death sentences was in the exercise of the sound discretionary power vested in the court below by the Act of May 14, 1925, P. L. 759, section 1, which provides in part: "In cases of pleas of guilty, the court, where it determines the crime to be murder of the first degree, shall, at its discretion, impose sentence of death or imprisonment for life."

There are here no extenuating circumstances to move a court to impose the milder of the two sentences: *Com. v. Harris*, 314 Pa. 81, 85; *Com. v. Thompson*, 321 Pa. 327, 332.

The serious problem is whether one judge may hear the evidence and determine the degree of the crime after a plea of guilty to murder.

The Act of May 22, 1923, P. L. 306, section 1, provides in part: "But if such person [one indicted for murder] shall be convicted by confession, *the court* shall proceed, by examination of witnesses, to determine the degree of the crime, and to give sentence accordingly."

What is meant by the word "court" as used in this statute? Does it mean that the court en banc must hear and decide the case, or is it used synonymously with the word "judge"?

For a better understanding of the sense in which the term "court" is employed in the Act of 1923, it is necessary to study its meaning in general, and more particularly, its interpretation when used in statutes conferring powers or prescribing duties upon a court. A court has been defined as "a place where justice is judicially administered": *Summers v. Kramer*, 271 Pa. 189, 196; *Murdy v. McCutcheon*, 95 Pa. 435, 437; *King v. King*, 1 P. & W. 15, 19. A court embraces several essential elements, all of which are indispensable to its existence from a legal standpoint, and only one of which is the judge or judges designated by law to preside over it and to hear and determine the matter before it: *Butts v. Armor*, 164 Pa. 73, 83; *Carter's Estate*, 254 Pa. 518, 527.

The term "court" is unfortunately used in popular speech in a rather loose manner with different meanings depending upon the particular sense in which it is employed: *Jermyn's Election Expenses,* 57 Pa. Superior Ct. 109, 116. It is employed, however, most frequently in speaking of the judge or judges who preside over the tribunal.[1] It is at times exceedingly difficult to ascertain whether the legislature means one of the judges of the court or the court en banc. In construing the word "court," as used in the Act of 1923, to determine whether it comprehends within its purport "judge" or "judges assembled," it must be kept in mind that the general statutory rule is that one judge may preside over the court of oyer and terminer, which has the exclusive jurisdiction in this State of homicide cases. Section 1 of the Act of March 14, 1877, P. L. 77, so provides. Prior to the Act of 1877 it was the policy of this State to require two judges to sit in homicide cases: see Act of February 3, 1843, P. L. 8, section 4. Now our criminal courts need only be presided over by one judge in any case which comes within their jurisdiction, and it is reasonable to suppose that when the legislature confers upon "the court" of oyer and terminer a statutory duty or power, the reference is to a court with one judge.

---

[1] "The words 'court' and 'judge' are so frequently used interchangeably that it is not suprising that those unversed in legal terminology accept them as meaning the same thing. . . .": *Carter's Estate,* 254 Pa. 518, 527. "It is true that the words 'court' and 'judge,' as used are synonymous, and the judge of a court, when presiding or holding court, is by common usage referred to as the court. . . .": *City of Moline v. Chicago, B. & Q. R. Co.,* 104 N. E. 204, 262 Ill. 52. "The word 'court' is often used interchangeably with the word 'judge' ": *Louisville & N. R. Co. v. Mc-Donald,* 31 So. 417, 79 Miss. 641; see also *Pressley v. Lamb,* 4 N. E. 682, 105 Ind. 171; *Mascall v. Drainage Com'rs,* 14 N. E. 47, 122 Ill. 620. "The judge of a court, while presiding over the court, is by common courtesy called 'the court,' and the words 'the court' and 'the judge' or 'judges' are frequently used in our statutes as synonymous": *Levy v. Bigelow,* 34 N. E. 128 (6 Ind. App. 677).

This view is strengthened by the fact the legislature has among its membership many lawyers and the body in general is familiar with the established practice of one judge trying criminal and other cases. Since the legislature has said that one judge is competent to hold criminal court, it is our duty to follow that mandate and so construe the term "court" with reference to the number of judges required to sit, unless there is sound reason to hold otherwise.

In construing the meaning of an ambiguous statutory term, which is subject to more than one interpretation, we adopt a construction which will make effective the intention of the legislature. Where there is a general statutory provision conferring a power or imposing a duty upon a court, the character and nature of the power or duty, and the objects and purposes to be attained by it, may be such that the function to be performed is of a type which can only be properly carried out by all the members of the court. A court thus assembled includes all the judges or a majority who have jurisdiction to perform the particular statutory duty vested in the court. See *Carter's Estate,* supra, at p. 527. We were there considering the power of the orphans' court to appoint and remove a guardian. The statute conferred jurisdiction upon "the court," and we held it must be exercised by the entire court or a majority thereof. The Carter case must be considered in relation to its facts, and cannot control in a subsequent suit a new set of facts ostensibly within its ruling but in reality not covered by it.[2] In *Frick's Estate,* 277 Pa.

---

[2] Considered in an abstract sense, the rule holds that the imposition of any power or duty by statute upon "the court" necessitates a discharge of the power or duty by the court en banc. Obviously such an inflexible rule of construction, in total disregard of the nature of the act to be performed, would in many cases retard the administration of justice and ignore not only custom and usage long established, but also the accepted meaning placed upon the word "court" in statutes relating to the orphans' court. It would practically nullify the statutory provisions enabling one

242, 252, we said: "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision."

The nature and character of the statutory power and the practice under the common law and related statutes must control the interpretation of the term "court." Is the duty of such nature as to require joint consideration by all the members of the court? What has been the practice in the past? Nearly all our cases dealing with the term involve the power of appointment or removal of individuals either in a fiduciary or public capacity. *Carter's Estate*, supra, concerned the removal of a guardian. In *Moritz v. Luzerne County*, 283 Pa. 349, an act authorizing "the court of common pleas of each county" to employ court interpreters was construed to mean the authority must be exercised by the assembled tribunal and not by one judge. In *Hanover Township School Directors*, 290 Pa. 95, an act giving taxpayers the

---

judge to hold the orphans' court: see Act of June 7, 1917, P. L. 363, Sec. 1[b] and [c]. Many statutes conferring power upon the orphans' court use the term "court," where it has been the established practice to conduct the hearing before one judge. No one would seriously contend that the settlement of the accounts of guardians of minors, testamentary trustees, executors and administrators, requires the presence of the entire court: Act of June 7, 1917, P. L. 363, Sec. 9, [a], [b] and [d]; nor is it necessary for the court en banc to confirm accounts of fiduciaries: Act of June 7, 1917, P. L. 447, Sec. 46[f]; audit accounts: Act of June 7, 1917, P. L. 447, Sec. 47[b]; or send an issue to the court of common pleas for trial by jury: Act of June 7, 1917, P. L. 363, Sec. 21[a]. Each and every one of these statutes confers the power upon "the orphans' court," and yet the settled usage in most cases arising under them is to have one judge preside. A literal application of the broad language in the Carter case would be unthinkable and would result in a harsh and unjustified interpretation of the term "court" as used by the legislature in these and other statutes.

right to petition "the court of common pleas" for the removal of school directors and conferring upon "the court" the power to remove the board and appoint other directors was held to require action by the court en banc in the exercise of the appointive power. In *Sterrett v. MacLean,* 293 Pa. 557, an act giving the sheriff the right to appeal "to the judge or judges of the common pleas court" from a decision of the salary board refusing to appoint an additional sheriff's deputy at his request was held to impose the duty upon the judge or judges, if there be more than one, to hear and determine the case. The appointment and removal of public officials or fiduciaries is a power which has far reaching consequences and should be exercised by all the available judges of the tribunal assembled together. In statutes conferring such power upon "the court," the term "court" must be interpreted to mean "court en banc" in order to make effective the intent of the legislature.

In the case at bar the power conferred upon "the court" by the Act of 1923, supra, is of a very different nature. The statute imposes upon "the court" the duty to hear witnesses and determine the degree of the crime after a plea of guilty by one indicted for murder. The hearing of evidence, while of great importance, is a function ordinarily performed by one judge. Determining the degree of guilt is not a trial though facts from the evidence must be found. In *People v. Chew Lan Ong,* 75 Pac. 186, 141 Cal. 550, where it was argued that a similar statute in California was a deprivation of the right of an accused to a jury trial, the court said: "The proceeding to determine the degree of the crime of murder after a plea of guilty is not a trial. No issue was joined upon which there could be a trial." See also *Hallinger v. Davis,* 146 U. S. 314, 319. The examination of witnesses and determination of the degree by the court is part of the sentencing power vested in the court. That power has always been exercised by the judge who tries the case and not by the court en

banc, notwithstanding the fact that nearly all the statutes dealing with such power use the term "court": see Act of February 28, 1913, P. L. 2, section 1; Act of April 29, 1929, P. L. 854, section 4; Act of June 29, 1923, P. L. 975, No. 397, section 1. While all these statutes confer the sentencing power upon "the court," it is significant that the Act of April 29, 1929, P. L. 854, section 2, permitting the imposition of life imprisonment for fourth and subsequent offenses makes it "in the discretion of the judge trying the case."

With this practice before it, the legislature must have used the term "court" in the Act of 1923 in a similar sense. While this act imposes a grave responsibility upon the presiding judge, and one which must be performed with the greatest care, nevertheless it is a type of power which has long been exercised by one judge, and the statute must be interpreted in that light. It is noteworthy that in the comparatively recent case of *Com. v. Garramone*, 307 Pa. 507, the trial judge, sitting alone without a jury, heard the evidence, decided that the defendant was guilty of murder in the first degree and imposed the sentence of death. The question of the right of a single judge to hear and determine such cases was not directly raised, but this court reduced the death sentence to life imprisonment, and, evidently with the problem in mind, cited the Act of 1877, supra, conferring upon one judge the power to hold a court of oyer and terminer in homicide cases. That case sustains the view that the Act of 1923 does not require more than one judge to perform the duty prescribed.

Appellants contend, however, that the decision of the court below finding them guilty of murder in the first degree was reached by three judges, two of whom neither saw nor heard the witnesses, and were thus incapacitated to pass upon their credibility. They cite in support of this contention *Com. v. Staush*, 256 Pa. 620. To avoid misunderstanding as to the manner in which the court below functioned, the three judges filed a state-

ment submitting what actually took place. The testimony was heard by the president judge, sitting alone. After the testimony had been transcribed and filed, the president judge studied it and concluded that both defendants were guilty of murder in the first degree and that the penalty should be death. He then prepared an opinion setting forth the reasons for his conclusions, which, along with a copy of the notes of testimony, he presented to the two other judges of the court, requesting them to read the record and check his conclusions. They did this and agreed with the conclusions reached. The president judge then added the following sentence to his opinion: "The other judges of this court concur in these conclusions." All three judges were on the bench at the time defendants were called for sentence and the death penalty was imposed. The facts show that the decision was made solely by the judge who conducted the hearing, saw and heard the witnesses and passed upon their credibility. The mere fact that the other two judges were permitted to read the notes of testimony and to express their views as to the correctness of the conclusions reached by the presiding judge does not mean that they took part in the decision. The case had already been decided by the president judge when the record came into their hands, and it was perfectly proper for him to seek their sentiments in a matter of such grave consequence. A judge cannot participate in the decision of a case where it turns upon the credibility of the witnesses who testify at a hearing at which he was not present, but there is nothing to prevent a judge from expressing his opinion upon matters before his court, even though it may not be controlling. In *Com. v. Addison*, 4 Dallas 225, this court said: "But we are (with the same unanimity) of opinion, that every judge has a right, and emphatically, that it is his duty, to deliver his sentiments upon every subject that occurs in court. We add, so far as the expression of our sense of decorum may have weight, that we think,

it would be indecent and improper, in any presiding judge, to attempt to prevent his associates from the exercise of this right; from the performance of this duty."

The facts of *Com. v. Staush,* supra, distinguish it from the instant case. There defendant entered a plea of guilty, and three of the five judges of the court sat at the hearing to determine the degree of his crime. After the hearing the president judge, who had not been present during the taking of testimony, read the transcript and deliberated with the others. The four judges together fixed the degree. The controlling fact was that a judge who was not present at the hearing and did not hear the witnesses took part in the decision of the case, wrote the opinion and pronounced sentence. This is a practice severely condemned in this State as well as in others. In the case at bar the president judge fully performed his duty under the Act of 1923 before the other judges acted, and their action was merely in an advisory or supplementary capacity and not essential to the jurisdiction exercised.

The last assignment of error remaining to be discussed relates to the refusal of the court below to grant appellant Shawell's motion to withdraw his plea of guilty, which was presented to the court below after sentence had been imposed, and is now joined in by appellant England. The rule is well settled that a motion to withdraw a plea of guilty and to be allowed to enter a plea of not guilty is addressed to the sound discretion of the court before which the plea is entered, and unless there has been a clear abuse of that discretionary power its action will not be reversed on appeal. See *Com. v. DiPaul,* 122 Pa. Superior Ct. 53, where this matter was fully discussed. No valid reason exists for permitting appellants to withdraw their pleas of guilty, and the ends of justice would not be served by the granting of such permission.

Judgments affirmed and records remitted to the court below for the purpose of execution.