Kensington Club Liquor License Case.

Argued October 11, 1948.  Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Horace A. Segelbaum,* Deputy Attorney General, with him *Andrew G. Uncapher,* Special Deputy Attorney General and *T. McKeen Chidsey,* Attorney General, for appellant.

*Mead J. Mulvihill,* with him *P. K. Jones* and *Mulvihill, Gollmar, Herron & Grier,* for appellee.

OPINION BY RENO, J., April 12, 1949:

The Liquor Control Board refused to issue a license to the Kensington Club.  Upon appeal the court below, after a hearing de novo before one judge, reversed the board and commanded it to grant the license.  The board brought the case here.

One ground upon which the board based its refusal was that the City of New Kensington, where the club is located, was allowed a quota of 25 licenses under the Act of June 24, 1939, P. L. 806, 47 PS §744-1001, et seq., and there were already 42 licenses in that territory. However, Westmoreland County is one of the jurisdictions which has held that the Quota Law does not apply to clubs.

The latest legislation applicable to clubs is the amendatory Act of July 24, 1941, P. L. 483, §1, 47 PS §744-2, which provides: " 'Club' shall mean any reputable

group of individuals associated together not for profit for legitimate purposes of mutual benefit, entertainment, fellowship or lawful convenience, *having some primary interest and activity to which the sale of liquor shall be only secondary which,* if incorporated, has been in continuous existence and operation for at least one year, and if first licensed after the effective date of these amendments, shall have been incorporated in this Commonwealth, and if unincorporated, for at least ten years, immediately preceding the date of its application for a license under this act, *and which regularly occupies, as owner or lessee, a clubhouse or quarters for the use of members.* Continuous existence must be proven by satisfactory evidence. The board shall refuse to issue a license if it appears that the *charter is not in possession* of the original incorporators or their direct or legitimate successors. . . ." (Italics added.)

The Kensington Club was incorporated in 1934, and thereafter secured a club liquor license. It was connected with the Knights of Columbus, occupied quarters in the latter's building, and when the Knights lost the building in 1938 the club discontinued its activities. It was allegedly reorganized during 1945. Whether the present members are the "direct or legitimate successors" of "the original incorporators" presented a question of fact concerning which there is considerable doubt. Much of the testimony in the hearing de novo revolved around this question, and the protestants, incorporators and members of the original organization, vigorously challenged the right of the present membership to exist and act under the certificate of incorporation.

The organization does not now "regularly occupy, as owner or lessee, a clubhouse or quarters for the use of its members." It has a lease for three years, contingent upon the issuance of a license, with Ralph and Rosa Tocco, owners of a property which is now licensed as the McDonough Hotel. Whether the furniture upon

the premises is now owned by the Toccos or the club does not clearly appear, but the record contains a transcript of a chattel mortgage given as security for $5400 loaned by the Toccos to the club. The terms of payment do not clearly appear in the record, but at the argument we were informed that the rent upon the lease and payments upon the mortgage would amount to approximately $250 a month. The club now has 33 members, and the fixed charges, together with other expenses such as heat, light, liquors, supplies and the salaries of attendants would seem to impose a major problem for the membership. Either they will be obliged to indulge in serious drinking or a large influx of new members is expected. It is difficult to avoid the conclusion that the effort is to transform a saloon into a licensed club, probably another "one-man club", free to operate without the limitations and restrictions imposed upon the hotel license.

If the club intends to pursue "some primary interest and activity", the evidence does not disclose it. The charter of the club has not been printed, but from some vague testimony we gather that it included the purpose, "to sponsor athletics and entertainment for the younger members." But whether and how these objectives are actually to be pursued, the record is silent.

It would seem that the board's objections to the club were well founded, and that its discretion was properly exercised. Licensing of clubs of this character does not seem to have been within the legislative contemplation, and their sanction must inevitably and again bring the dispensation of alcoholic beverages into disrepute. However, by reason of the nature of the appeal and the state of the record, our power to interfere is limited. On appeal we examine only questions relating to (a) the jurisdiction of the court below and (b) the regularity of the proceedings therein; and we confine this decision

to the only question of procedural regularity raised by appellant.

That the court possessed jurisdiction is evidenced by the amendatory Act of May 27, 1943, P. L. 694, 47 PS §90: "Any person aggrieved by the refusal of the board to issue . . . a license may appeal to *the court* of quarter sessions . . . of . . . the county in which the premises applied for are located . . ." (Italics added.)

However, the proceedings below were not regular, and the order will be reversed. Appeals from the board go "to the Court", and we judicially know that there are three judges in the Court of Quarter Sessions of Westmoreland County. Only one judge heard the case de novo, and he refused to allow his decision to be reviewed by the court en banc. This was error.

"Court" and "judge" or "judges" are employed interchangeably in our legislation, and it is sometimes difficult to determine whether the General Assembly intended that a specified judicial function should be performed by one judge or by the court en banc. There are numerous cases on the subject, and they are not all in harmony. But from them we think a fairly consistent rule can be distilled. Where an important duty, not of common-law origin, which directly relates to the conservation of public rights and vitally affects the interests of the community, is statutorily imposed upon "the court" the function must be performed by all of its judges.

It was broadly held at one time that the imposition of any power or duty by statute upon "the court" required a discharge of the function by the whole tribunal. *Carter's Est.*, 254 Pa. 518, 99 A. 58. More recently, however, the Supreme Court has adopted a more practical criterion for ascertaining the legislative intention. In *Com. v. Shawell*, 325 Pa. 497, 504, 191 A. 17, the factors which are to be considered were clearly stated by Mr. Chief Justice KEPHART: *"The nature and character of*

*the statutory power and the practice under the common law and related statutes must control the interpretation of the term 'court'.* Is the duty of such nature as to require joint consideration by all the members of the court? What has been the practice in the past?" (Italics added.) Answering its own questions, the Court decided that one judge was empowered to determine the degree of murder of one who confessed his guilt, under the Act of May 22, 1923, P. L. 306, which conferred that power upon "the court". The Supreme Court found that under related statutes one judge of the oyer and terminer court was authorized to conduct trials therein, and that the function imposed by the statute is "part of the sentencing power vested in the court" which "has always been exercised by the judge who tries the case."

The Court cited with approval a number of cases, among which is *Sterrett v. MacLean*, 293 Pa. 557, 563, 143 A. 189, where it was held that an appeal by a sheriff from the decision of a county salary board must be heard by the court en banc. There the Court said: "This very important subject has heretofore been before this court in various aspects, and we have consistently reprehended the allowance of proceedings in court before only one judge when the particular judicial district had two or more judges and where the vital interest of litigants or *the conservation of public rights* renders it imperative that a case be heard, considered and decided by aid of the experience and knowledge as well as the personal attention of more judges than one to the evidence and the arguments before the court." (Italics added.)

When the nature of the duty imposed by our liquor control legislation is considered, it must be apparent that the conservation of public rights renders it imperative that the granting of a license be decided by aid of the experience and knowledge as well as the personal attention of all the available members of the court.

The liquor control acts are exertions of the police power of the State. *Com. v. Stofchek*, 322 Pa. 513, 185 A. 840. As stated by the legislature, the purpose of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15 (Special Session) §3(a), 47 PS §744-3, is "the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon". And although the board is under a mandate to grant hotel and restaurant licenses where the conditions prescribed by the statute have been met, the legislature by specifying stringent conditions, and more distinctly by the Quota Law and by conferring *discretion* upon the board in the granting of *club* licenses (Id. §403, 47 PS §744-403) has plainly indicated that a large number of licensed places in a community is detrimental to its peace and morals.

Hence, the grant of licenses is a duty not to be lightly assumed either by the board or the courts. The board acts in an administrative, or, perhaps, in a quasi-judicial capacity. On appeal the courts exercise a judicial function, *Schlaudecker v. Marshall*, 72 Pa. 200, upon a question of public concern, *Raudenbusch's Petition*, 120 Pa. 328, 14 A. 148, in which the good order and morals of the community must be considered and zealously guarded. *Taylor's License*, 68 Pa. Superior Ct. 543. The primary consideration is the public interest, *Strouse v. Nye*, 53 Pa. Superior Ct. 304, and no one has any property in the right to sell liquor. *Com. v. Spence*, 230 Pa. 571, 79 A. 775. There is no inherent or constitutional right to engage in the liquor traffic, and whether one shall be permitted to exercise the privilege is a subject of paramount importance to the public. The public welfare, the impact of licenses upon the peace of the community, and their influence upon the morals of the people are primary, and they are so fundamentally important that the whole tribunal should be called upon to adjudicate the question.

Moreover, under related statutes the power has invariably been exercised by the courts en banc. The present liquor legislation is, according to *Com. v. Stofchek*, supra, p. 520, merely an extension of the Brooks High License Law of May 13, 1887, P. L. 108, and, if the reported cases are a safe criterion, the granting of liquor licenses under the old law was a function universally performed by the courts of quarter sessions en banc.

The courts of quarter sessions are composed of the judges of the courts of common pleas of each county. Constitution, Art. V. §9; Act of April 14, 1834, P. L. 333, §43, 17 PS §332. In Philadelphia and Allegheny counties the quarter sessions court is composed of judges detailed from time to time for that service. Id., Art. V. §8. In judicial districts composed of more than one county one president judge is elected; and in each county of the district two associate judges "not learned in the law" are elected; and these constitute the quarter sessions court of the county. Id. Schedule, §16. The associate lay judges sit in all the courts including the oyer and terminer and the quarter sessions courts. *O'Mara v. Com.*, 75 Pa. 424.

The Brooks Law, supra, §3, provided that licenses for the sale of liquors "may be granted only by the court of quarter sessions of the proper county." Under that provision it was held that where the court was composed of two judges learned in the law their concurrence was necessary to the grant of a license. *Foreman's License*, 20 Pa. Superior Ct. 98. Where the quarter sessions court was composed of a president judge learned in the law and associate judges not learned in the law, it was held that a majority of the judges could grant a license. *Branch's License*, 164 Pa. 427, 30 A. 296. The associate lay judges could refuse a license against the vote of the president judge. *Sperring's License*, 7 Pa. Superior Ct. 131. Or they could grant a license notwithstanding the

dissent of the president judge. *Pierce's License,* 61 Pa. Superior Ct. 397. It cannot be doubted that under the former law "the court" which passed upon license applications was composed of the court en banc, including associate lay judges.[1]

The salutary practice under the Brooks Law furnishes a safe guide for appellate review of the actions of the board. The exigencies of the instant case do not require us to hold that quarter sessions courts are obliged to conduct hearings de novo before the full bench, although that is the approved practice, is desirable and commendable, and apparently is followed in many judicial districts. See e. g., *Independent Order of Sons of Italy Club Liquor License Case,* 161 Pa. Superior Ct. 448, 55 A. 2d 546. But, certainly where an appropriate and timely request is made for a hearing by the court en banc or for the review of the determination of the hearing judge by the entire tribunal it is reversible error, an irregularity apparent upon the face of the record, to deny the request. It is of no moment that the request was made by the protestants without the joinder of the board. The protestants were not without a direct and immediate interest in the litigation like appellant in *Seitz Liquor License Case,* 157 Pa. Superior Ct. 553, 43 A. 2d 547. They claimed to be the original incorporators of the club, and since their status is recognized by the statute they had, under *Azarewicz Liquor License Case,* 163 Pa. Superior Ct. 459, 62 A. 2d 78, "a direct interest to protect and to be protected," and had "a status above and different from that of a remonstrant." That they

---

[1] In Philadelphia County it was provided by Court Rule 12: "The Judges assigned to hold the criminal courts during March term will hear and determine applications for [liquor] licenses": 2 Purdon's *Digest* (13th ed., 1905) p. 2309. This rule was adopted pursuant to the provision of the Constitution (Art. V §8) authorizing the judges in Philadelphia and Allegheny counties to designate the judges who shall from time to time constitute the quarter sessions court.

excepted to the hearing judge's decision before moving for argument before the court en banc did not bar them or the board from the right to be heard by the court en banc.

The decree and order are reversed and the record is remitted to the court below for argument before and decision by the court en banc.