Commonwealth ex rel. Hoch v. Banmiller

*Jay L. Benedict, Jr.,* for relator.

*George C. Eppinger,* District Attorney, for respondent.

DEPUY, P. J., August 10, 1957.—Arthur L. Hoch on April 6, 1957, filed his petition with this court for a writ of habeas corpus on the ground that he was being illegally restrained of his liberty in the Eastern State Penitentiary as result of a sentence to imprisonment there for a period of not less than five years nor more than 15 years, to be computed from January 3, 1951. This sentence was imposed by the Court of Oyer and Terminer of Franklin County on July 15, 1951, to no. 5, February term, 1951, following plea of guilty

entered by defendant upon a charge of statutory rape upon petitioner's daughter, Dorene E. Hoch, aged 13.

On April 8, 1957, a rule was issued to show cause why the prayer of the petition should not be granted, directed to William J. Banmiller, Warden of Eastern State Penitentiary, with notice to the District Attorney of Franklin County and to the Attorney General of Pennsylvania, returnable April 26, 1957.

The rule having been served, the warden filed an answer setting forth the sentence, attaching a photostatic copy of the commitment and stating that the questions raised refer to petitioner's trial and events prior to trial of which respondent has no knowledge and regarding which he therefore makes no answer. The District Attorney of Franklin County filed an answer, relying on the record of the case and denying the majority of the averments of the petition and as to the remainder, alleging that even if true, they do not constitute any ground for the relief that petitioner seeks. At the same time the district attorney filed a motion to quash the petition on the ground that the same does not show any matter that comes within the scope of the remedy of habeas corpus, that the record shows the proceedings in the case were regular, that defendant entered a plea of guilty in the case and that there is no ground for issuing the writ.

So that the case might be argued on questions of law, and for the enlightenment of the court, the court on May 20, 1957, appointed Jay L. Benedict, Esq., of this bar, as counsel for petitioner on the argument. The case was argued on June 18, 1957.

The court will now consider the petitions and answers and the district attorney's motion to dismiss.

In order to understand the matters under consideration, it is necessary to set forth the two different prosecutions that were made against petitioner, Arthur L. Hoch, at about the same time, including the prose-

cution (shown as B(2) below) that is the subject of petitioner's present imprisonment:

A. Court of quarter sessions, no. 47, February sessions, 1951: Assault and battery, prosecution made December 27, 1950, prosecutor Mrs. Alice L. Hoch (defendant's wife);

B. Court of oyer and terminer, no. 5, February term, 1951: 1st count: Incestuous adultery prosecution made January 8, 1951, prosecutor Theodore W. Jones, PSP; 2nd count: Statutory rape, prosecution made January 8, 1951, prosecutor Theodore W. Jones, PSP.

The record of the case shows the following further chronology:

January 3, 1951: Warrant for arrest of defendant on first charge (A above) issued by Justice of the Peace Shirley J. Zarger.

January 3, 1951: Defendant apprehended, arraigned and committed to Franklin County Jail in default of bond of $5,000, for later hearing.

January 8, 1951: Prosecution made by Theodore W. Jones, Pennsylvania State Police, for incestuous adultery and statutory rape, alleged to have occurred on or about November 15, 1950, and prior thereto within the two years last past.

January 22, 1951: Preliminary hearing held by justice of the peace in all cases; defendant present with counsel of his own choice, William C. Hazlett, Esq., and George S. Black, Esq.; defendant held in assault and battery case under $1,000 bond; in adultery count under bond of $5,000; in statutory rape count, defendant held without bond. Attorney for prosecutrix in the assault and battery case having been Edwin D. Strite, Jr., Esq.

January 29, 1951: Defendant being in open court endorsed a bill of indictment as to the count of statutory rape waiving presentation of the bill to the grand jury. The court deferred sentence.

January 29, 1951: On motion of the district attorney the court granted a nolle prosequi of the assault and battery case.

March 1, 1951: Defendant was committed by the court to the Harrisburg State Hospital for mental observation, diagnosis and treatment.

July 13, 1951: Defendant was sentenced upon his guilty plea to undergo imprisonment in separate or solitary confinement at labor in the State Penitentiary for the Eastern District of Pennsylvania for a period of not less than five years nor more than 15 years to be computed from January 3, 1951.

January 21, 1957: On motion of the district attorney, the court granted a nolle prosequi of the first count of the indictment, incestuous adultery.

From petitioner's petition, apparently prepared by himself, we gather that his grounds for the relief sought may be listed as follows:

1. That petitioner was wrongfully held without arrest and warrant for a period of five days from January 3, 1951, to January 8, 1951, during which time a confession was obtained.

2. That the prosecution for statutory rape was brought in the wrong court.

3. That the indictment for statutory rape was defective in that it nowhere states the offense in that terminology.

4. That petitioner when entering a plea of guilty to the charge of statutory rape was not advised of his rights and that the attorneys who represented defendant were in fact part of a plot to have him unlawfully committed to the penitentiary.

5. That petitioner did not effectively waive his right to a jury trial.

6. That there was no adequate proof of the alleged offense.

1. We take up these grounds in sequence. Petitioner alleges that he was held in custody for an excessive period of time before arrest, during which time a confession was obtained from him by duress, as he terms it. He appears to rely upon the recent case of Turner v. Pennsylvania, 338 U. S. 62, 93 L. Ed. 1810.

The fallacy in his argument, however, is that in the present case petitioner was lawfully detained in the Franklin County Jail from the time of his arrest on January 3, 1951, upon the charge of assault and battery that had been made by his wife on December 27, 1950. At no time was he held in detention or jail without proper legal process, nor is there any showing in the petition of any facts amounting to duress of any kind. The mere averring of conclusions is not enough: Commonwealth ex rel. Kennedy v. Mingle, 388 Pa. 54.

Irrespective of the allegation of coercion, however, the distinguishing factor in the present case is that there was no trial of defendant, there was no confession employed as evidence before any trier of facts, which could possibly form the basis of any conviction, having in mind that defendant three weeks after his original arrest pleaded guilty in open court on January 29, 1951, a week after his preliminary hearing, when he was represented by two able counsel whom he had employed.

2. Defendant asserts that the case is in the wrong court and therefore sentence cannot be sustained. In point of fact the indictment is upon a printed form at the beginning of which appear the words "In the Court of Quarter Sessions of the Peace for the County of Franklin". Due to a clerical error this caption is wrong, because the case was actually in oyer and terminer. However, the bill sets forth immediately below the caption, and also on the endorsement, "no. 5, February term, 1951". The word "term" is indicative of the court of oyer and terminer rather than the court of

quarter sessions. Further and more materially, the case actually was and is recorded in the docket of the court of oyer and terminer at no. 5, February term, 1951. The caption is not part of the indictment: Commonwealth ex rel. Koenig v. Cavell, 183 Pa. Superior Ct. 445, 448.

A formal defect in a bill of indictment must be called to the attention of the court before plea is entered and then an application for amendment can be made by the district attorney. Failing this, petitioner has waived his objection and cannot now complain: Criminal Procedure Act of March 31, 1860, P. L. 427, sec. 11, 19 PS §431.

3. Defendant alleges that the language in the bill of indictment was defective in that it nowhere mentions the word "rape" and therefore insufficiently states the offense. Actually the bill read as follows:

"And the Inquest aforesaid, inquiring as aforesaid, upon their oaths and affirmations, respectfully as aforesaid, do further present, that the aforesaid Arthur L. Hoch afterwards, to wit, on the day and year aforesaid (on or about the 15th day of November, 1950 and at divers other times within the two years last past), at the Township of Letterkenny aforesaid, in the County and within the jurisdiction aforesaid, with force and arms, in and upon one Dorene E. Hoch, aged thirteen (13) years, in the peace of God and of the said Commonwealth, then and there being, unlawfully and feloniously did carnally know and abuse one Dorene E. Hoch, she, the said Dorene E. Hoch, then and there being a woman child under the age of sixteen years and he, the said Arthur L. Hoch then and there being a male person of the age of sixteen and upwards, she, the said Dorene E. Hoch, being the daughter of the said Arthur L. Hoch, and he being a married man and having a lawful wife in full being".

We find the language of this indictment to be sufficient to charge the offense of statutory rape and in accord with the wording of the statute. The absence of the word "rape" is not material: The Penal Code of June 24, 1939, P. L. 872, sec. 721, 18 PS §4721; Criminal Procedure Act of March 31, 1860, P. L. 427, sec. 11, 19 PS §261.

4. Defendant appears to assert that at the time he entered his plea of guilty he did not know what he was doing and was not properly advised by his attorneys, William C. Hazlett (deceased November 19, 1956) and George S. Black, who were, he says, in a conspiracy with his family to have him incarcerated. The record of the case, according to the earlier practice of the court, does not display the names of counsel, whether appointed by defendant or the court, present and acting on behalf of a defendant at the entry of a guilty plea, and at sentence. However, the transcript of the preliminary hearing shows petitioner's attorneys were there present and representing him, and his present petition establishes that they were with him as his employed attorneys at the times of plea and of sentence. The attorneys mentioned were not appointed by the court but were selected by defendant when he had ample time for deliberation, they did not represent him on the spur of the moment, but it appears they were his attorneys continuously beginning with the preliminary hearing of January 22, 1951, through the time when he entered his plea on January 29, 1951, and through the time when he was sentenced on July 13, 1951.

The effort to denigrate the integrity, loyalty and efficiency of these able and conscientious members of our bar whom defendant chose by his own act as his agents, cannot, after petitioner's silence of more than six years since the occurrence now under examination,

be made the basis for the petition, if in fact such an allegation could under these facts, ever have supported issuance of the writ sought. Petitioner is bound by his own act in selecting his counsel and by their acts as his agents and attorneys. It is especially instructive to note that no objection of any kind was made by defendant regarding the work of his two attorneys, either at the time of filing his plea or during the period of almost six months that elapsed to the date of sentence. During these many months defendant could have changed his counsel or could have requested the court to withdraw his plea. There is nothing in the petition in the way of specific information as to the time when petitioner first became aware of the supposed "conspiracy" on the part of his counsel nor of the specific acts of their alleged malpractice. Nor is there any explanation of the delay in bringing these supposed derelictions to the court's attention.

It will be further noted that the text of petitioner's application for parole, refused by the State Parole Board in 1956 (notably during the lifetime of Mr. Hazlett), fails by its language (despite its 16 pages) to support his present argument as to the failure of his chosen attorneys effectively and loyally to represent him.

Petitioner's attack upon his chosen counsel runs into obstacles under the doctrines of agency, of estoppel and of laches so far as these concepts may be made applicable on the criminal side of the court and in a proceeding of the present type. There is a presumption of the regularity of legal proceedings. This presumption gains force with the passage of time. A petition for writ of habeas corpus is not a substitute for appeal. Where so long an interval separates the guilty plea and sentence as in the present instance, when defendant had not one but two able counsel, privately

employed by himself, no court can give weight to averments of the present character impeaching the whole proceedings, as to counsel and even the court, without specifications a great deal more timely and precise than those contained in the present petition. The facts of the supposed conspiracy certainly are not pleaded, nor are any facts of a character to explain or justify the delay in raising the question.

The court has not been pointed to any case where a defendant in a criminal case, having either one or two attorneys of his own choosing, in a series of proceedings consuming five and one-half months altogether, after plea of guilty, sentence and imprisonment, has been heard six years later to show in a habeas corpus proceeding that his attorneys did not in fact exert themselves in his behalf but were conspiring to bring about his guilty plea and sentence. See Beaney, "Right to Counsel in American Courts", page 122 (1955).

Petitioner intimates that the court committed error in permitting him, while, according to his suggestion, he was not mentally responsible, to have entered a plea of guilty or to have undergone sentence. A bald statement of this kind by petitioner is not enough to compel the court to go into a hearing: Commonwealth ex rel. Koenig v. Cavell, 183 Pa. Superior Ct. 445. The mere fact that petitioner before sentence was directed by the sentencing judge, the Honorable Edmund C. Wingerd, to be examined at the Harrisburg State Hospital in no way impairs petitioner's criminal responsibility under the law. Following the mental examination the court proceeded to sentence petitioner. During the months from January to July if in fact an error had occurred or any dereliction by his counsel, petitioner could have notified the court to this effect and of his desire to withdraw his plea of guilty. See Act of April 15, 1907, P. L. 62, amended by Act of June

15, 1939, P. L. 400, 19 PS §241; Commonwealth v. Shawell, 325 Pa. 497, 508; Commonwealth v. Cavanaugh, 183 Pa. Superior Ct. 417.

5. Petitioner contends that his signed endorsement on the bill of indictment whereby he waived presentation of the bill to the grand jury and entered a plea of guilty, is insufficient, in that there is no attestation of his signature by the district attorney, or by the clerk or judge. It is noted that the signature of the then district attorney, Rudolf M. Wertime, does appear at the conclusion of the indictment and that the signature of "Arthur L. Hoch" which, in its configuration appears to conform closely to the signature on the present petition, is found at the end of the form of waiver and plea. These are regular in every respect, irrespective of the absence of any attestation, the latter not being a requirement.

6. Petitioner questions the adequacy of the proof of the alleged offense and raises the question of proof of penetration. In passing, we examine the transcript of the justice of the peace, following the preliminary hearing of January 22, 1951, where this paragraph appears:

"Dorene E. Hoch testified that in November 1950, at their Upper Strasburg home the defendant had her down on the couch and put his private parts into hers. She said that when she was twelve years of age this first happened. She was afraid to tell her mother, she said."

Defendant having pleaded guilty to the bill of indictment, language of which has been quoted under paragraph 5, the problem of proof does not arise.

Petitioner discourses at length upon the fact that he did not sign a waiver of jury trial. But the statute he cites relates purely to the procedure for a defendant where he sees fit to be tried by the judge without a jury on a plea of not guilty. Obviously the cited statutory

text deals with a situation unrelated to that we now face. It has no bearing where, as here, defendant entered a plea of guilty and waived presentation of the bill of indictment to the grand jury. He was not deprived of a jury trial other than by his own act. The proceeding that was taken on his plea of guilty was in conformity with the Act of April 15, 1907, P. L. 62, sec. 1, 19 PS §241.

In Commonwealth v. Asher, 181 Pa. Superior Ct. 80, where a plea of guilty had been entered, the refusal of the lower court to grant a writ of habeas corpus was affirmed. The court noted that in relator's petition there was no averment that he was innocent of the offense to which he entered the plea of guilty. Such is also the case in the present petition of Hoch. Since he does not assert he is innocent, he is hardly in a position to contend that his guilty plea was wrongfully entered. Further, the court record in a criminal proceeding may not be impeached collaterally on habeas corpus: Commonwealth ex rel. Paylor v. Claudy, 173 Pa. Superior Ct. 336, 340.

Although we have not, in reading the reported cases, found a specific holding to this effect, it seems to us reasonable that when a court considers an allegation of unlawful detention under a habeas corpus petition, it is proper to segregate two situations having major points of difference. We refer *first* to the case where detention occurs before hearing and adjudication of the legal issues of the case, which may result in petitioner's imprisonment, and *second* to the situation afterwards.

Where petitioner has been deprived of his liberty before trial or hearing, it is proper to apply a set of rules (as to procedure, pleading, etc.) heavily weighted in favor of the prisoner. On the other hand, in the case where an individual has been tried, convicted, sen-

tenced and imprisoned according to the forms of law, for him then to seek release by habeas corpus or otherwise, the court may well require that he specify with particularity the alleged errors and the reason for his not having raised them at an earlier date: Commonwealth ex rel. Kennedy v. Mingle, 388 Pa. 54. Otherwise the time and energy of the trial courts, already heavily burdened in most counties, are consumed by petitions, many of them frivolous, while serious litigation which has not yet had the benefit of initial hearing and adjudication must be delayed.

In our view it is essential, fair and reasonable to require specific allegations in a habeas corpus petition from convicted prisoners. Many prisoners, who have a great deal of time on their hands in jail or penitentiary, employ it in formulating these petitions, while an overburdened judge at home is endeavoring to emerge from the steady pressure of daily work in the interest of litigants generally.

There is an understandable desire on the part of prisoners in the penitentiary to be free. Some concern must be felt, however, for the body politic which has a profound interest not only in seeing that no citizen is restrained illegally of his liberty, but also that the law shall not become a plaything for convicted criminals who desire at a minimum to enjoy a trip occasionally at State expense from the penitentiary to the scenes of their earlier days where the momentary spotlight of a habeas corpus hearing may be focused upon them. It is important to our form of government that the courts do not become divorced from reality and do not become objects of popular scorn. The courts risk such an estimate when their time is preëmpted by endless vague petitions for review of matters already adjudicated at great length, while the great volume of other public business must be delayed.

Now, this August 10, 1957, the prayer of the petitioner for writ of habeas corpus is denied and the petition is dismissed.